**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____ :
                                 :
FRANCISCO GHIGLIOTTY RAWLINS,    :
                                 : Civil Action No. 07-4354 (JAP)
          Petitioner,            :
                                 :
     v.                          :          O P I N I O N
                                 :
MICHELLE R. RICCI, et al.,       :
                                 :
          Respondents.           :
_____ :
```

**APPEARANCES:**

Francisco G. Rawlins, Pro Se         Mary R. Juliano
#426204/SBI # 440122B                Monmouth Co. Prosecutor's Off.
New Jersey State Prison              71 Monument Park
P.O. Box 861                         Freehold, NJ 07728-1261
Trenton, NJ 08625                    Attorney for Respondents

**PISANO**, District Judge

Petitioner Francisco Ghigliotty Rawlins, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Superintendent Michelle R. Ricci and Anne Milgram, the New Jersey Attorney General.

For the reasons stated herein, the Petition must be denied.

## BACKGROUND

1.   Factual Background

As stated in the opinion of the Superior Court of New Jersey, Appellate Division:[1]

On April 25, 1999, defendant Francisco Rawlins, a/k/a Raymond Eaford, was an inmate at the Monmouth County Jail.  At approximately 8 a.m., defendant escaped by climbing over a razor wire-topped perimeter fence and gaining access to a roof from which he jumped into the parking lot near the visitor's entrance.

Jessica Flannelly was standing in line at the visitor's entrance when she heard a scrambling sound on the roof and raised voices.  As she ran toward her car, she saw defendant on the roof about to jump.  She continued to run to her car.  Just as she was about to put the key in the lock, she heard someone scream, "drop the keys or you'll get hurt."  She turned and saw defendant looking at her.  Frightened and fearing for her life, she dropped the keys and ran back toward the jail.  Defendant entered Flannelly's car and drove out of the parking lot.

Corrections Officer White observed defendant run up to Flannelly's car and heard him say to her, "give me your f'ing keys."  He saw her throw her keys to the ground.  White also observed defendant pick up the keys, enter the car, and speed away from the jail.

Following a search of defendant's cell, a team of officers drove to his girlfriend's house in Perth Amboy.  He was hiding in the attic of her home but punched a hole in the roof and escaped.  An officer followed him onto the roof and tried to subdue him.  Defendant was eventually apprehended by other officers.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

(Respondents' Appendix ("RA") 13; Opinion of the Superior Court of New Jersey, Appellate Division, State v. Rawlins, A-2341-01T4 (May 6, 2003), at pp. 2-3).

At trial, Petitioner testified and did not deny committing the acts; however, he denied that he acted purposely or knowingly. He indicated that he was undergoing psychiatric treatment and was on medication at the time of the incident, and said he did not know what he was doing on the day he escaped. (From RA 11 at p. 46).

2.   Procedural Background

On October 13, 1999, a Monmouth County Grand Jury returned an indictment against Petitioner, charging him with escape, contrary to N.J.S.A. 2C:29-5 (count one); carjacking, contrary to N.J.S.A. 2C:15-2a(1)(2) (count two); resisting arrest, contrary to N.J.S.A. 2C:29-2a (count three); disarming a law enforcement officer, contrary to N.J.S.A. 2C:12-11a (count four); and aggravated assault on a police officer, contrary to N.J.S.A. 2C:12-1b(5)(a) (count five).

In July of 2001, Petitioner was tried by jury and was found guilty of all counts. He was sentenced on November 9, 2001 to an aggregate sentence of 50 years, with a 25 year period of parole ineligibility, pursuant to an extended term.

Petitioner appealed the conviction and sentence, and on May 6, 2003, the Superior Court of New Jersey, Appellate Division ("Appellate Division") affirmed.  The New Jersey Supreme Court denied certification on September 8, 2003.

On April 19, 2004, Petitioner filed a state petition for post-conviction relief ("PCR").  The trial court denied relief on July 29, 2005, without an evidentiary hearing.  The Appellate Division affirmed the denial of relief on February 14, 2007 (despite remanding for a citation correction in the Judgment of Conviction), and the Supreme Court denied certification on May 11, 2007.

Petitioner filed this habeas petition on September 10, 2007. On September 13, 2007, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  An Order to Answer was issued and Respondents filed a Response to the Petition and state court record on January 14, 2008.

Petitioner asserts the following claims in this habeas petition:

1a.   Petitioner's right to due process was violated by the trial court's erroneous, inconsistent, confusing, incomplete, and prejudicial instruction on the law of carjacking.

1b.   The trial court further exacerbated the confusion by instructing the jurors that carjacking and robbery "are the same thing."

1c.   The trial court gave conflicting and contradictory instructions on the mens rea element that is required for a conviction of carjacking.

4

1d.  The trial court failed to mold the model jury charge to the facts of the case.

2.  The trial court violated Petitioner's right to due process by failing to instruct the jury on the law of prior inconsistent statements.

3.  Petitioner's right to due process was violated by the trial court's failure to give an instruction on the law of oral communications (a *Kociolek* charge).

4.  Petitioner's right to due process was violated by the trial court's erroneous exclusion on hearsay grounds of Petitioner's proffer of exculpatory evidence.

5.  Petitioner's right to due process was violated by the trial court's instruction that precluded the jury from considering a defense theory of the case.

6.  Appellate counsel's failure to raise the argument that Petitioner's sentence was unconstitutional as it was based upon facts not contained within the jury verdict constituted ineffective assistance of counsel.

7.  The Appellate Division failed to apply the law to facts in affirming the post-conviction relief court's finding that Petitioner failed to demonstrate that he was denied effective assistance of counsel.

8.  Appellate counsel's failure to raise the argument that Petitioner's sentence was unconstitutional as it was based upon facts not contained within the jury verdict constituted ineffective assistance of counsel.[2]

9.  The Appellate Division failed to apply the law to facts in affirming the post-conviction relief court's decision that defendant was not entitled to an evidentiary hearing on the ineffective counsel claims.

10. Trial counsel's failure to subpoena Rietta Smith during trial deprived Petitioner of a fair trial.

---

[2]  Petitioner's eighth ground for relief is duplicative of his sixth ground for relief.

(Petition, ¶ 12).  It appears that the claims have been exhausted in the state courts.

## DISCUSSION

### A.   Standards Governing Petitioner's Claims

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless

6

arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).  A state court decision "involve[s] an
unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case," and may involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
See id. at 409.  In determining whether the state court's
application of Supreme Court precedent was objectively
unreasonable, a habeas court may consider the decisions of
inferior federal courts.  See Matteo v. Superintendent, 171 F.3d
877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  See Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.
Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims

presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000); see also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B.   Petitioner's Jury Charge Claims (Grounds 1-3, 5)**

Petitioner argues in grounds 1a through 1d, 2, 3, and 5, that the trial court erroneously charged the jury. Petitioner's jury charge claims were presented to the state courts in the course of Petitioner's direct appeal. In fact, the Appellate Division's opinion on Petitioner's direct appeal is almost entirely devoted to Petitioner's jury charge claims. (RA 13). The Appellate Division rejected the jury charge claims, finding that the charges were proper under state law, and that any errors in the charges were "harmless." (RA 13).

Generally, however, jury instructions that are inconsistent with state law do not merit federal habeas relief. Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (internal citations omitted). Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of

9

proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997); see also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it generally is subject to "harmless error" analysis. See Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)). In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

10

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." Cool v. United States, 409 U.S. 100, 104 (1972). "[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." Victor v. Nebraska, 511 U.S. 1, 22 (1994); see also Cage v. Louisiana, 498 U.S. 39, 41 (1990). As the Supreme Court explained in Victor,

> so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.

Victor, 511 U.S. at 6 (citations and internal quotation marks omitted).

"[A] misdescription of the burden of proof ... vitiates all the jury's findings." Sullivan v. Louisiana, 508 U.S. 275, 281 (1993). Such an error is considered structural and thus is not subject to harmless error review. See id. at 280-82; but see Neder v. United States, 527 U.S. 1, 8-11 (1999) (applying harmless error analysis where jury was not instructed on an element of an offense).

Here, the Appellate Division found that the jury instructions complied with state law. This Court sees no reason

to disturb that reasonable finding.  None of the challenged instructions operates to lift the burden of proof on an essential element of the claim or otherwise violates Petitioner's due process rights.  Furthermore, it is clear from the record that the trial judge properly charged the jury regarding reasonable doubt.  The trial judge charged:

> Now, this defendant, as are all defendants in criminal cases, is presumed to be innocent until proven guilty beyond a reasonable doubt.  That presumption continues throughout the whole trial of the case and even during your deliberations unless and until you have determined that the State has proven his guilt beyond a reasonable doubt.
>
> * * *
>
> A reasonable doubt is an honest and reasonable uncertainty in your minds about the guilt of the defendant after you've given full and impartial consideration to all of the evidence.
>
> A reasonable doubt may arise from the evidence itself or from a lack of evidence.  It is a doubt that a reasonable person hearing the same evidence would harbor.  Proof beyond a reasonable doubt is proof, for example, that leaves you firmly convinced of a defendant's guilt.  In this world we know very few things with absolute certainty.  In criminal cases, the law does not require proof that overcomes every possible doubt.
>
> If based on your consideration of the evidence you're firmly convinced that the defendant is guilty of the crime charged, then you must find him guilty.  If, on the other hand, you're not firmly convinced of the defendant's guilt, you must give the defendant the benefit of the doubt and find him not guilty.
>
> The burden of proof is on the State and it never shifts.  It remains on the State throughout the whole trial of the case.  No burden with respect to proof is imposed on the defendant. He is not obliged to prove his innocence. Unless the State has proved the crime charged in each of its elements beyond a reasonable doubt, the

> defendant is entitled to an acquittal.   You as jurors
> should find your facts from the evidence adduced during
> the trial.

(RA 5 at pp. 9-11).   Thus, the jury was well-instructed on the

reasonable doubt standard of review, and Petitioner has not

demonstrated that the burden of proof was lifted in violation of

his due process rights.

Further, Petitioner has not demonstrated that the decision

of the state courts was contrary to, or an unreasonable

application of, clearly established federal law, nor was it based

on an unreasonable determination of the facts in light of the

evidence presented.   Petitioner is not entitled to relief on this

claim.

## C.   __Claim of Trial Court Errors (Ground 4)__

In Ground 4 of his Petition, Petitioner argues that the

trial court violated his due process rights by erroneously

excluding on hearsay grounds Petitioner's proffer of exculpatory

evidence.   Petitioner argues:

> To corroborate his account of the events, the
> defendant proffered the testimony of Robert Venezia.   He
> would have testified regarding Rietta Smith's
> [Petitioner's girlfriend] description of the defendant's
> demeanor when he arrived at her house on the day of the
> alleged escape.   This evidence served two vital purposes:
> it was stand alone evidence showing that the defendant
> did not act with a purposeful or knowing state of mind on
> the day of the incident.   Additionally, that evidence
> corroborated the defendant's account, thereby bolstering
> the defendant's credibility.   The ruling of the trial
> court excluding the proffer was erroneous and highly
> prejudicial.   The jury should have heard the exculpatory
> evidence that could have cast doubt about whether the

13

defendant acted with a culpable mens rea.   The improper
exclusion of this defense evidence warrants remedial
actions by a reviewing court.

(Petition, ¶ 12D).

The record reflects that during the course of Petitioner's
case, Robert Venezia, a detective-sergeant with the Monmouth
County Prosecutor's Office was called as a witness.  (RA 4 at p.
99).  Petitioner sought Venezia's testimony to elicit
Petitioner's girlfriend's statement regarding Petitioner's
demeanor when he arrived at her apartment.[3]  (RA 4 at p. 99-103).
The trial judge sustained the prosecutor's objection to the
testimony as hearsay, and told defense counsel that since
Petitioner was testifying, defense counsel could ask Petitioner
whether he made a statement to his girlfriend, which, if so,
would not constitute hearsay.  The trial judge rejected defense
counsel's argument that Venezia's testimony was an exception to
hearsay.  (RA 4 at p. 104).  Upon request by defense counsel, the
trial court again reviewed the claim and rejected it after the
court's lunch break.  The trial court ruled that the testimony

---

[3]  According to defense counsel, when Petitioner arrived at
his girlfriend's apartment after the escape, he was covered in
blood.  She asked him why he escaped and he answered that he was
a "pterodactyl."  Defense counsel sought to elicit this testimony
from Venezia, rather than from the girlfriend, because
Petitioner's girlfriend was a co-defendant in the case.  Their
trials had been severed and the girlfriend's charges were pending
at the time of Petitioner's trial.  Petitioner's girlfriend
eventually entered the Monmouth County Pretrial Intervention
Program and successfully completed the program on February 3,
2003.

could not come in as an "excited utterance" exception to hearsay because defense counsel did not have the person to whom Petitioner made the statement (his girlfriend) on the stand to establish that Petitioner was in an excited state.  (RA 4 at pp. 111-112).

The Appellate Division reviewed this claim on direct appeal and found that it was "without sufficient merit to warrant discussion in a written opinion."  (RA 13 at p. 13).

Under federal law, it is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process.  See Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'" (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967))).

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a

fundamentally fair trial.  See Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001).

A review of the record reveals that the trial court's decision to exclude the testimony of Venezia was not so pervasive as to have denied Petitioner a fair trial.  After Venezia was dismissed as a witness, Petitioner testified.  He told the jury about mental health problems, and stated that he did not remember what happened the day of the escape and that he had had a seizure.  (RA 4 at pp. 120-129).  Also testifying for Petitioner were two corrections officers who stated that Petitioner, during the course of his escape, told the officers to shoot him.  The jail nurse also testified that Petitioner was under the care of a psychiatrist, was on medication, and, on the day of the escape, had a seizure.

Based on the foregoing, this Court finds that Petitioner presented a defense to the jury, which the jury rejected.  Even if the state ruling was erroneous, which this Court does not find, Petitioner was not denied fundamental fairness during the course of his trial because Venezia was dismissed as a witness.  As such, this habeas claim fails.

D.  **Claims of Ineffective Assistance of Counsel (Grounds 6-8, 10)**

Petitioner argues that he was denied the effective assistance of trial and appellate counsel.  As to trial counsel, Petitioner argues that trial counsel should have properly

16

presented a diminished capacity or insanity defense, should have called Petitioner's girlfriend to the stand, and failed to call an expert witness concerning Petitioner's use of medication and the medication's side effects.  As to appellate counsel, Petitioner argues that appellate counsel should have argued that Petitioner's sentence was unconstitutional because it was based on facts not found by a jury or admitted by defendant.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to

17

> second-guess counsel's assistance after conviction or
> adverse sentence, and it is all too easy for a court,
> examining counsel's defense after it has proved
> unsuccessful, to conclude that a particular act or
> omission of counsel was unreasonable. A fair assessment
> of attorney performance requires that every effort be
> made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged
> conduct, and to evaluate the conduct from counsel's
> perspective at the time. Because of the difficulties
> inherent in making the evaluation, a court must indulge
> a strong presumption that counsel's conduct falls within
> the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption
> that, under the circumstances, the challenged action
> "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.

Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.

1020 (1996).

If able to demonstrate deficient performance by counsel, the

petitioner must also show that counsel's substandard performance

actually prejudiced his defense. See Strickland, 466 U.S. at

687. Prejudice is shown if "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability

is a probability sufficient to undermine confidence in the

outcome." Id. at 694. The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence.

See id. at 695-96. Thus, the petitioner must establish both

deficient performance and resulting prejudice in order to state

an ineffective assistance of counsel claim. See id. at 697; see

also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

18

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  See Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865 at *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir.), cert. dismissed, 527 U.S. 1050 (1999).

19

In this case, the state courts examined Petitioner's ineffective assistance claims in the course of Petitioner's PCR petition.  Citing <u>Strickland</u>, the Appellate Division found:

> To establish a prima facie case of ineffective assistance of counsel, a defendant must demonstrate that defense counsel's performance was indeed deficient and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  A strong presumption exists that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Because "prejudice . . . is not presumed," a defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding.  Such acts or omissions of counsel must amount to more than their tactical strategy.

> Against this standard, we first examine defendant's argument that trial counsel was ineffective for failing to call Rietta Smith [Petitioner's girlfriend] as a witness. Smith encountered defendant when he entered her home during his flight from police.  Defendant claims he suffered from a diminished capacity at the time of the incident.  He argues that Smith's testimony would have supported his defense because she would have testified that he told her that he was a "pterodactyl," which would have demonstrated to the jury the extent of his mental condition. The trial judge rejected defendant's argument and so do we.  Smith was a codefendant, awaiting the prosecutor's approval of her admittance into a pretrial intervention program.  His claim that she would have provided exculpatory evidence is no more than speculation.  Defendant has not made a prima facie showing that there exists a reasonable probability that had Smith been called to testify, the result of the proceeding would have been different.

> Defendant further claims that trial counsel was ineffective for failing to call a second psychiatrist to support his diminished capacity defense.  His argument is without merit.

> In preparation for trial, counsel had defendant evaluated by a psychiatrist, who concluded that defendant

did not suffer from a mental illness or defect that would have caused him to suffer from diminished capacity at the time he committed the offenses.  Defendant now asserts that he should have been examined by a second psychiatrist.  He does not, however, explain why a second psychiatrist would have testified that defendant's mental capacity was impaired when he committed the charged offenses.  Defendant has provided no facts from which we could infer that the second psychiatrist's finding would be different from those of the first psychiatrist who examined defendant.

Defendant's remaining allegations of ineffective assistance of trial counsel are equally without merit and do not warrant discussion in this opinion.

(RA 30 at pp. 6-9)(internal citations omitted).

Petitioner's argument that his sentence was unconstitutional because it relied on facts not found by a jury, the basis of Petitioner's ineffective assistance of appellate counsel claim, was also rejected by the Appellate Division.  The Appellate Division recognized that Petitioner's sentencing claim rested upon the United States Supreme Court decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000)(holding that facts that increase the penalty for a crime beyond the statutory maximum must be found by a jury) and Blakely v. Washington, 542 U.S. 296 (2004)(clarifying that a sentencing court is not prohibited from counting prior criminal convictions in imposing a sentence that exceeds the statutory maximum), and the New Jersey Supreme Court decision in State v. Natale, 184 N.J. 458 (2005)(holding that a sentence above the presumptive statutory term based solely on a judicial finding of aggravating factors other than a prior conviction,

violates the Sixth Amendment jury guarantee).  The Appellate Division found that Petitioner's sentence to an extended term of imprisonment was "consistent with the sentencing law as it existed at the time defendant was sentenced."  (RA 30 at p. 11). Because Petitioner's sentence was not on direct appeal when Blakely or Natale was decided, the Appellate Division held that these cases did not apply to Petitioner's sentence.  (RA 30 at p. 10).  Further, relying on Petitioner's prior record, the sentencing judge's imposition of the extended term did not violate Apprendi.  (RA 30 at p. 11).

      After reviewing the record, this Court agrees with the findings of the state courts.  The evidence against Petitioner in this case was overwhelming, as Petitioner admitted his involvement.  Further, eight officers involved in the incident testified on behalf of the State, as did the woman who Petitioner carjacked.  As noted, Petitioner countered the State's case with testimony from the Petitioner that he did not recall the incident, and testimony concerning his medications and seizure the day of the incident.  The jury chose to believe the State's witnesses and discredit the Petitioner's version of the facts. The verdict was based on a credibility determination by the jury, determined against Petitioner.  Petitioner has not demonstrated deficient representation by counsel.  Counsel vigorously defended a case that appeared difficult to defend, as Petitioner himself

admitted his involvement, yet on the witness stand, did not recall any of the events that day.

Additionally, Petitioner has not demonstrated that anything counsel could have done with regard to the potential witness would have changed the outcome of the proceedings.

For purposes of habeas relief, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  The state courts correctly applied the Strickland federal standard to Petitioner's ineffective assistance of counsel claims, and reasonably applied the facts of the case in the decisions.  Thus, Petitioner is not entitled to habeas relief for his ineffective assistance of counsel claims.

**E.    Claim Regarding Evidentiary Hearing (Ground 9)**

Petitioner argues that he should have been granted an evidentiary hearing on his PCR petition on the issue of ineffective assistance of counsel.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We

23

have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 680 (1990))).  Nonetheless, Petitioner has failed to establish that he met the state law threshold for an evidentiary hearing.  <u>See</u> <u>State v. Preciose</u>, 129 N.J. 451 (1992) (setting forth the petitioner's burden to establish a prima facie case in order to obtain an evidentiary hearing).  As <u>Preciose</u> sets forth, an evidentiary hearing is required if there is a dispute of fact respecting matters that are not on the record.  In this case, a review of the record reveals that the PCR judge correctly applied the state law, and the federal <u>Strickland</u> standard, in denying the evidentiary hearing.  (RA 23).

### CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

## **CONCLUSION**

_____For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated:    July 7, 2008

25